## WELLS v. WELLS.

Common Pleas Court, Summit County.

No. 136051.   Decided March 2, 1949.

C. B. McRae, Akron, for plaintiff.
Amos Englebeck, Akron, for defendant.

### OPINION

By WATTERS, J.

"Mr. McRae: If the court please, this is the case of Howard S. Wells, plaintiff v. Anna Belle Wells, pending in this court. I should not have said 'pending' in this court. It's a case in which the plaintiff obtained a divorce from the defendant on or about March 9, 1942, and in that decree of divorce the court made an order ordering the plaintiff to pay for the support of the minor child of the parties the sum of twenty-five percent of his earnings, but not less than five dollars per week.

The plaintiff has filed an application in this court for a modification of that order, asking the court to relieve him of any further payment for the support of the child.

I think opposing counsel and myself and the parties can agree upon the following statement of facts:

It is agreed by the parties that on or about March 9, 1942, this court approved a decree of divorce granting a divorce to the plaintiff in case No. 136051, and the decree speaks for itself, which decree the court has.  I won't need to put that in evi-

dence. By agreement of the parties, the court will look at it and see what the order is.

Mr. Englebeck: Except to say that it incorporates the separation agreement.

Mr. McRae: The decree shows all of that. The decree shows what order was made, and what the whole situation was.

The Court: In other words the court will have to look to the decree and interpret that. Now can you agree on what the facts are out of which you claim the right to modification exists?

Mr. McRae: I think we can agree that this child, Phyllis Wells, was nineteen years of age on November 29, 1948; that she has obtained a job with the Federal Government in Washington, in the Navy Department, and that her salary is Twenty-Two Hundred Dollars a year.

The Court: When did that employment start?

Mr. McRae. That employment began January 8, 1949.

Mr. Englebeck: It is temporary for six months trial.

Mr. McRae: I will put it this way, subject to Civil Service rules.

Mr. Englebeck: That's what the young lady told her mother, she is on trial for six months.

The Court: I think it should be agreed this way, that if the court should find that by reason of the fact that she has employment, and is emancipated to that 'extent, and the court should find that that did give the plaintiff the right to have the decree modified, that also if there was a subsequent change in that employment or situation, it would be subject to further modification, assuming that the court could modify it in the first place.

Mr. McRae: That's agreeable with me.

Mr. Englebeck: That's all right with us.

Mr. McRae: In other words we are agreeing that the modification be made only while she is employed and self-supporting.

The Court: Miss Sirdefield can write that up and send a copy to each counsel and give one to the court, and each side will have ten days to file briefs."

*          *          *          *          *

The decree filed March 12, 1942, and approved by this court (Judge Ray B. Watters) is as follows:

"This case came on this day, the 9th of March, 1942, to be heard upon the petition and oral evidence of witnesses, and the court being fully advised in the premises, finds: That the

plaintiff had been a resident of the State of Ohio for more than one year next preceding the filing of his petition and for thirty days prior thereto a bona fide resident in Summit County in said State. That he was married to the defendant as alleged in his petition. That one child, Phyllis Ruth Wells aged 11 years, is the fruit of said marriage. That the defendant was personally served with summons and a copy of the petition in this cause and is in default for answer or demurrer and that more than six weeks has elapsed since defendant was served with summons in this cause. And that the plaintiff and defendant have agreed upon a property settlement between them which the court finds to be fair, just and equitable and therefore approves the same. The Court further finds that the defendant has been guilty of gross neglect of duty towards the plaintiff as charged in his petition.

It is therefore ordered, adjudged and decreed by the Court that the marriage contract heretofore existing between the plaintiff and defendant be and the same hereby is dissolved and set aside and both parties released therefrom, and plaintiff is granted a decree of divorce from the defendant on the ground of gross neglect of duty. Defendant is also decreed the care, custody and control of the minor child, Phyllis Ruth Wells, the plaintiff to have the right of visitation at all reasonable times. Plaintiff is to execute and deliver to the defendant a quit claim deed to the real estate referred to in plaintiff's petition and both parties are forever barred of any claim or right of dower in any property subsequently owned by either party.

The following is a true copy of the agreement entered into between the plaintiff and defendant:

This agreement made and entered into this 2nd day of March, 1942, at Akron, Ohio, by and between Howard S. Wells, Party of the First Part, and Anna Belle Wells, Party of the Second Part, Witnesseth:

Whereas, certain differences have arisen between the Party of the First Part and Party of the Second Part making it impossible for them to longer live together as husband and wife, and whereas Howard S. Wells has filed his suit in the Common Pleas Court of Summit County, Ohio, being cause No. 136051 against his wife, Anna Belle Wells, praying for a divorce and, whereas, the parties hereto desire to make an amicable settlement of all their property rights out of court, the following agreement is hereby entered into:

Party of the First Part agrees to convey all his right, title and interest in and to the home of the parties hereto located

at 2030 Eighth Street, Cuyahoga Falls, Ohio, to Party of the Second Part.

Said Party of the First Part also agrees that Party of the Second Part shall hold as her own all the furniture located in said home and that the Party of the First Part will make the payments on the mortgage on said home until July 1, 1942, at which time Party of the Second Part agrees to assume the balance due on the mortgage on said home.

Party of the First Part further agrees to pay the sum of Two Hundred Fifty and 00/100 Dollars ($250.00) on the note held against the parties hereto by Ruth Billow, the principal on said note being Five Hundred and 00/100 ($500.00) Dollars. Said Party of the First Part agrees to pay said Two Hundred Fifty and 00/100 Dollars ($250.00) on said note as soon as possible but shall have eighteen (18) months time to pay the full amount of Two Hundred Fifty and 00/100 Dollars ($250.00).

Party of the First Part further agrees to continue and pay for sufficient insurance upon his life to cover the balance due on the mortgage on said home.

The Party of the First Part further agrees to pay for the care, support and maintenance of the daughter of the parties hereto the sum of twenty-five per cent (25%) of his weekly earnings, and in no event shall the sum payable be less than Five and 00/100 Dollars ($5.00) per week.

Second Party in consideration of the foregoing hereby releases First Party from all claims of alimony, year's support and other rights given Party of the Second Part by reason of the marital relation.

Said First Party of the First Part is given the right of reasonable visitation of said child, Phyllis Ruth Wells, at such times as the parties hereto can agree and the Party of the First Part also releases Party of the Second Part from any and all claims he might have by reason of the marital relation.

In case a divorce be granted to either party, it is hereby mutually agreed that a copy of this agreement shall be submitted to the Court for inclusion in the Journal Entry of Divorce.

The Parties hereto mutually agree when requested one by the other to join in such conveyance as might be necessary to convey any real estate now owned or hereafter acquired by either, and either of the parties hereto may at any time sell or dispose of or encumber any such real estate or other property free from the dower of the other.

In Witness Whereof the parties have hereunto set their hands to duplicates hereof the day and date written above."

\*　　　\*　　　\*　　　\*　　　\*

The Supreme Court, in **Tullis v. Tullis, 138 Oh St, 187, 20 O. O. 237,** held as follows:

"A decree in a divorce action **unconditionally** fixing the amount and method of payment by the husband for the support of a minor child pursuant to and in accordance with a previous contract of separation between the husband and wife providing for complete property settlement and support to their minor child, which contract is specifically. approved by the court and made a part of the decree, may not, in the absence of fraud or mistake, be subsequently modified by the court so as to lessen the amount of support for such minor child."

(Emphasis ours.)
On page 194 (of **138 Oh St, 187**) the Supreme Court stated:

"Such a contract is binding between the parents entering into it as **fixing their mutual obligation for the support of their minor children,** and the courts should not modify such contractual obligations. The parties having made an agreement specifically permitted and authorized by statute, the court may not unmake that contract or make a new one for them. To do so would in the opinion of the court, constitute an impairment of the obligation of contract. **The statute however becomes a part of the contract, and if the allowance is inadequate,** the court may notwithstanding the contract, make an adequate allowance."

(Emphasis ours.)
The "statute" referred to is §8000 GC, which authorizes such contracts between parents upon separation.
The question in the **Tullis** case as set forth by Judge Hart in the majority opinion was (See page 189).

"Did the Common Pleas Court have jurisdiction to reduce the amount theretofore decreed by the court to be paid by the father for support of his minor child, when the court entering such decree in a divorce action between the parents, incorporated therein the terms of a written contract of separation theretofore entered into between such parents, **effecting a complete property settlement and providing for the payment of specific amounts for a specified time** by the father

for the support and maintenance of the minor child, the retention of such jurisdiction for such purpose not being provided for either by the agreement or the order of the court?" (Emphasis ours.)

In the **Tullis case** it will be observed that the amount of support and the specific time thereof—until the child reached twenty-one years of age—is specifically covered. In the instant case no definite period of support was fixed.

On page 190 the court said: "The contract of separation between the parties in this case was complete and final * * *."

So in reality the parents in our case did not fully contract on that subject.

Also nothing was specified in the instant case on the question of emancipation of the child. This contingency was not covered nor was such condition a fact in the **Tullis case.**

No one would argue in this case or in the **Tullis case** that if the minor child died, the obligation to support would cease as to both parents. This is true because there would be no one to support.

The statutes involved and the contract entered into here contemplated the necessity to support by the father and mother.

Suppose the minor child married and was living apart with and supported by her husband, would either the father or mother be obligated to support her?

Now she is living apart from her mother and father. She is in Washington, D. C., earning Twenty-Two Hundred Dollars per year, and is actually emancipated.

On page 190 of the **Tullis case,** the court said: "But each must see that the child does not suffer for support and must protect the public from the expense of supporting the child." (Referring of course to the parents' duty.)

If she is not emancipated, then one of the parents is entitled to her earnings. Would that parent be the mother, and if so, would she still be entitled to the contractual support from the father also? I think not. Or would the father paying for her support be entitled to her wages in preference to the mother? I believe he would.

However the fact remains, if she is not emancipated, one of them is entitled to her earnings. If she is emancipated, then there is no obligation by either parent to support her, and she is entitled to keep her own earnings.

The law on that subject is discussed in Ohio Jurisprudence.

. Support of Emancipated minor.

"If parents relinquish control over their minor son and relinquish to him his earnings, they should not be chargeable with his support. The emancipation of a minor competent to support himself discharges his parents from their obligation to provide his support, but if he becomes unable to support himself, the parents' duty to support him revives." See **30 O. Jur., 541, Section 50.**

See also **Newkirk v. Newkirk, 129 Oh St,** 543, 2 O. O., 530, which is fully discussed in Judge Zimmerman's dissenting opinion in the **Tullis case.** The **Newkirk case** was one where the child, eighteen years old, became self supporting, and the court held the obligation to support at an end.

The court will order the support payments to cease as of January 9, 1949, subject to further modification in case the child's status changes.

Journal entry may be drawn in accordance with this finding, with exceptions to the defendant.